FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 23 2013

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATI REAL ESTATE HOLDINGS, LLC                                    PLANTIFF

VS                              NO. 4:13 cv 246 JLH

TENANTS OF 9609 COLLIE DRIVE LITTLE ROCK (IF ANY);        DEFENDANTS
DEBORAH BENNETT; AND
UNITED STATES OF AMERICA,
SECRETARY OF HOUSING AND URBAN DEVELOPMENT

REMOVED FROM:
SIXTH JUDICIAL DISTRICT, STATE OF ARKANSAS
CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION THIRD DIVISION
NO. 60CV12-3653
THE HONORABLE J. MOODY, CIRCUIT JUDGE

NOTICE OF REMOVAL

Defendant, Deborah D. Bennett for her NOTICE OF REMOVAL respectfully shows the

court the following:

This case assigned to District Judge _Holmes_

and to Magistrate Judge_____ _Volpe_

1. This case is removed pursuant to 28 USC 1441 and 28 USC 1443.

2. The case involves Federal law, US Constitution, United States Code and the

jurisdiction is also in the Federal Administrative Agencies and the Federal Courts.

3. Defendant has raised these federal defenses in her pleadings before the State

Courts. For example: Consent Orders dated April 11, 2013 involving GMAC, The

Office of Controller of the Currency, Office of the Federal Reserve and Office of Thrift Services. Plaintiff also asserts that jurisdiction of this case is in The United States District Court, District of Columbia District, USA vs. Bank of America et al 12-0361 (RMC)

4. Plaintiff and its predecessors filed bankruptcy in the United States Bankruptcy Court of the Southern District of New York; Case no. 12-12020 (MG)

5. The United States Attorney General, The Honorable Eric Holder, The Honorable Dustin McDaniel, Attorney General for the State of Arkansas and the Honorable Shawn Donovan Secretary of the United States Department of Housing and Urban Development (HUD) should be made a party to this case pursuant to 28USC2403 and the fact that they are parties of USA vs. Bank of America et al 12-0361 (RMC).

6. The Secretary of Housing and Urban Development filed an answer in this case in the state court. His answer did not honor his oath of office and his position as a party in USA vs. Bank of America et al 12-0361 (RMC).

7. This case should have been brought in United States District court as defendant cannot enforce her right in the State Court of Arkansas because of her race and color. See Bennett vs. GMAC et al Pulaski County Circuit Court Civil Division Third Division 60cv-11-3063.

Respectfully Submitted,

DEBORAH D. BENNETT
9609 Collie Drive
Little Rock, AR 72209
(501) 773-1572

ELECTRONICALLY FILED
2012-Aug-02 12:57:48
60CV-12-3653

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION

PATI REAL ESTATE HOLDINGS LLC                                      PLAINTIFF

vs.                              No. _____

TENANTS OF 9609 COLLIE DRIVE LITTLE ROCK AR (IF ANY);
DEBORAH BENNETT; AND
UNITED STATES OF AMERICA,
SECRETARY OF HOUSING AND URBAN DEVELOPMENT          DEFENDANTS

## COMPLAINT

Plaintiff, PATI Real Estate Holdings LLC, through its attorneys, Wilson and Associates, PLLC, for its complaint for foreclosure, states the following:

### Jurisdiction and Venue

1.     Plaintiff, PATI Real Estate Holdings LLC, is authorized to do business in the State of Arkansas

2.     The defendants herein are residents of this state, have transacted business in this state, or have an interest in, use, or possess real property in this state.

3.     The real property involved herein is located in Pulaski County, Arkansas.

4.     This Court has jurisdiction of the subject matter of and parties to this action.

### The Facts

5.     Deborah Bennett received title by Warranty Deed recorded April 10, 2007, as Instrument No. 2007027916 to the following property:

Land situated in the County of Pulaski in the State of Arkansas:  Lot 71, Section E
Belmont Subdivision to the City of Little Rock, Pulaski County, Arkansas.

The property is more commonly known as 9609 Collie Drive, Little Rock, Arkansas (the "subject

property".)  A true and correct copy of this warranty deed is attached hereto as Exhibit "A" and is made a part hereof.  By this conveyance, Deborah Bennett took title to the subject property in fee simple.

6.       On October 24, 2008, Deborah Bennett executed in favor of and delivered to Quicken Loans Inc. a deed of trust note in the principal amount of $90,659.00, with principal and interest payable as set forth therein. The note was subsequently endorsed in blank, and is currently held by Plaintiff herein.  A true and correct copy of the note is attached hereto as Exhibit "B" and is made a part hereof.

7.       Contemporaneously with the execution of the note and to secure its payment, Deborah Bennett executed in favor of and delivered to Ann Orsi-Smith as Trustee for Mortgage Electronic Registration Systems, Inc., as a separate corporation that is acting solely as a nominee for Quicken Loans Inc. and Quicken Loans Inc.'s successors and assigns a deed of trust on the subject property.

8.       The deed of trust was duly acknowledged and filed for record with the Circuit Clerk and Ex-Officio Recorder for Pulaski County, Arkansas on November 13, 2008, as Instrument No. 2008076959.  A true and correct copy of the deed of trust is attached hereto as Exhibit "C" and is made a part hereof.  The recordation of the deed of trust created a first lien on the property.

9.       Said deed of trust has been assigned to the Plaintiff herein by assignment recorded as instrument number 2012045251.  A true and correct copy of the assignment is attached hereto as Exhibit "D" and is made a part hereof.

10.      The deed of trust contains a waiver of all right of redemption and provides that if there is a default, the lender has a right to declare the entire unpaid balance of the debt, plus interest

167778                                         2

thereon, to be immediately due and payable. The deed of trust and the note further provide for a collection of attorney's fees, title expenses, and costs upon default.

11.    The note required monthly payments of principal and interest continuing until the indebtedness is fully paid.

<u>Count for Foreclosure</u>

12.    Deborah Bennett is now in default under the terms of the deed of trust and note, having failed to make the scheduled payments due November 1, 2009 and thereafter.

13.    Plaintiff is now owed the principal sum of $89,817.24, together with accrued interest thereon from the date of default until paid, a reasonable attorney's fee, title expenses, late charges and costs.

14.    Upon information and belief Deborah Bennett is not in active military service, and this action is not subject to the provisions of 50 U.S.C. App. § 501, *et seq.,* the Servicemembers Civil Relief Act. A true and correct copy of the Department of Defense Military Status report for Deborah Bennett is attached as Exhibit "E" and made a part hereof.

15.    The defendant, United States of America, Secretary of Housing and Urban Development, may claim an interest in the subject property based upon a subordinate mortgage executed in its favor by Deborah Bennett on September 16, 2009, and filed for record in the Office of the Circuit Clerk and Ex-Officio Recorder of Pulaski, Arkansas on October 6, 2009 as Instrument No. 2009067784. Any claim, right, title or interest in the property that might be held by United States of America, Secretary of Housing and Urban Development by virtue of said subordinate mortgage is junior, subordinate and inferior to any and all claims, right, title and interest held by plaintiff.

WHEREFORE, plaintiff, PATI Real Estate Holdings LLC, requests relief as follows:

167778                                                    3

A.      That plaintiff be granted judgment *in personam* against Deborah Bennett and *in rem* against the subject property for $89,817.24, together with accrued interest thereon from October 1, 2009 until paid, then in a per diem amount of $17.23, plus attorney's fees, title expenses, and costs, including late charges;

B.      For foreclosure of the deed of trust held by plaintiff;

C.      For a declaration of plaintiff's first lien position on the subject property;

D.      For the sale of the subject property with proceeds of the sale being applied pursuant to the orders of this Court; and

E.      For all other proper relief.

Respectfully Submitted,

WILSON & ASSOCIATES, P.L.L.C.
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211
(501) 219-9388

By: _____
      Shellie Wallace (92179)

Attorneys for Plaintiff

167778                                          4

2008076959 Received: 11/13/2008 11:08:30 AM Recorded: 11/13/2008 01:52:57 PM
Filed & Recorded in Official Records of PAT O'BRIEN, PULASKI COUNTY
CIRCUIT/COUNTY CLERK Fees $60.00



Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

Prepared By:Jeremy Fletcher
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI 48152

7525703 2

State of Arkansas

[Space Above This Line For Recording Data]

# DEED OF TRUST

| FHA Case No. |
| 031-3653561-703 |

MIN 100039032174696373

THIS DEED OF TRUST ("Security Instrument") is made on    October 24, 2008
The Grantor is Deborah Bennett, an unmarried woman

("Borrower"). The trustee is  Ann Orsi-Smith

whose address is 500 Pleasant Valley Drive, Little Rock, AR 72227

("Trustee"). The Beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws
of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)
679-MERS.

Quicken Loans Inc.
("Lender") is organized and existing under the laws of    the State of Michigan    , and
has an address of 20555 Victor Parkway, Livonia, MI 48152
. Borrower owes Lender the principal sum of
Ninety Thousand Six Hundred Fifty Nine and 00/100
Dollars (U.S. $ 90,659.00    ).

FHA Arkansas Deed of Trust with MERS - 4/96
Amended 2/98
Wolters Kluwer Financial Services
VMP®-4N(AR) (0811)
Page 1 of    Initials:



This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1, 2038
          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with the power of sale, the following described property located in                     Pulaski                     County, Arkansas:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number: 45L-030-00-073-00
which has the address of 9609 Collie Dr                                                      [Street]
          Little Rock                [City], Arkansas 72209        [Zip Code] ("Property Address");
     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     Borrower and Lender covenant and agree as follows:
     UNIFORM COVENANTS.
     1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
     2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP ®-4N(AR) (0611)                                        Page 2 of 9                                     Initials:

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating

VMP ®-4N(AR) (0411)                                        Page 3 of 9                                        Initials: _____

circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

VMP ®-4N(AR) (0611)                    Page 4 of 9                    Initials: [signature]

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

  **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

  **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

  **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

VMP®-4N(AR)(0611)

Page 5 of 9

Initials:

2008076959

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials:

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding and sale of the Property. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

It is understood and agreed to by Borrower that this Security Instrument is subject to the foreclosure procedures of the Arkansas Statutory Foreclosure Law, Act 53 of 1987, as amended from time to time (the "Act"), for Borrower's breach of any covenant or agreement in this Security Instrument. In furtherance and not in limitation of the provisions of paragraph 11, any forbearance by Lender in exercising any right or remedy under the Act shall not be a waiver of or preclude acceleration and the exercise of any right or remedy under the Act, or at the option of Lender, use of judicial foreclosure proceedings.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. The release shall be made without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time appoint a successor Trustee in accordance with Act 53 of 1987, as amended from time to time.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Growing Equity Rider     ☒ Other [specify]
☐ Planned Unit Development Rider     ☐ Graduated Payment Rider     Legal Attached



VMP ®-4N(AR) (0611)       Page 7 of 9      Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:



_____   _____ 10/24/2008 (Seal)
                                       Deborah Bennett                          -Borrower

_____   _____ (Seal)
                                                                                -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                          -Borrower

VMP ®-4N(AR) (0611)                    Page 8 of 9

**STATE OF ARKANSAS,**          Pulaski          **County ss:**
On this the     24th     **day of**     October     2008          , before me, the undersigned officer,
personally appeared Deborah Bennett, an unmarried woman

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she (they) executed the same for the purposes and consideration therein contained.
In witness whereof I hereunto set my hand and official seal.

Jim W. Brass
Notary Public      Tim W Brass

My Commission Expires: 1-17-2017

Lien Holder: Quicken Loans Inc.

Address: 20555 Victor Parkway
Livonia, MI 48152
Telephone Number: 1-800-466-6480
Contact Julie Carroll

TIM W BRASS
Arkansas - Pulaski County
Notary Public - Comm# 12358378
My Commission Expires Jan 17, 2017

for release of lien.

VMP®-4N(AR) (0811)          Page 9 of 9          Initials:

**EXHIBIT A - LEGAL DESCRIPTION**

Tax ID Number(s): 45L-030-00-073-00

Land situated in the County of Pulaski in the State of AR

**LOT 71, SECTION "E" BELMONT SUBDIVISION TO THE CITY OF LITTLE ROCK, PULASKI COUNTY, ARKANSAS.**

Commonly known as: 9609 Collie Dr, Little Rock, AR  72209



Page 8 of 9

2011022096 Received: 4/14/2011 11:35:03 AM
Recorded: 04/14/2011 11:36:13 AM Filed &
Recorded in Official Records of Larry Crane,
PULASKI COUNTY CIRCUIT/COUNTY CLERK
Fees $20.00

This Instrument Prepared by:
*WILSON & ASSOCIATES, P.L.L.C.*
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211
(501) 219-9388



## ASSIGNMENT OF DEED OF TRUST

**KNOW ALL MEN BY THESE PRESENTS:**

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, the undersigned, Mortgage Electronic Registration Systems, Inc., as a separate corporation that is acting solely as a nominee for Quicken Loans Inc. and Quicken Loans Inc.'s successors and assigns ("Assignor), does hereby grant, bargain, sell, convey, and assign unto GMAC Mortgage, LLC ( Assignee ) all of Assignor s right, title, and interest in and to a certain deed of trust executed by Deborah Bennett on October 24, 2008, and recorded November 13, 2008, as Instrument No. 2008076959, in the Office of the Circuit Clerk and Ex-Officio Recorder of Pulaski County, Arkansas (the  deed of trust ).

Assignor also assigns and transfers to Assignee all of its right, title and interest in and to the debt secured by the deed of trust.

Assignor warrants that it is the beneficiary of record of the deed of trust and Note, with full power to sell and assign the same; and that it has executed no prior assignment or pledge thereof.

The maximum principal indebtedness for recording purposes is $0.00

EXECUTED this   *8*   day of   *April*   ,   *2011*   .

Mortgage Electronic Registration Systems, Inc. as a
nominee for Quicken Loans Inc.



By:   ___**Matthew McBride**___
        *Assistant Secretary*

W&A No. 90-167778                                        1



**First National Title Company**
4001 Rodney Parham Rd., Bldg. 1, Suite 101
Little Rock, AR 72212

2007027916
04/10/2007  01:52:46 PM
Filed & Recorded in
Official Records of
PAT O'BRIEN
PULASKI COUNTY
CIRCUIT/COUNTY CLERK
Fees $11.00

# WARRANTY DEED
## (CORPORATION)

00000751

### KNOW ALL MEN BY THESE PRESENTS:

That Rush and Co., Inc., an Arkansas Corporation, hereinafter referred to as GRANTOR, a corporation organized under and by virtue of the laws of Arkansas by its President, duly authorized by proper resolution of its Board of Directors, for the consideration of the sum of One and no one hundredths ($1.00) Dollars, and other good and valuable consideration in hand paid by Deborah Bennett, an unmarried person hereinafter referred to as GRANTEE, the receipt of which is hereby acknowledged, does grant, bargain, sell and convey unto the said Deborah Bennett, an unmarried person and unto her heirs and assigns forever the following described land, situated in the County of Pulaski, State of Arkansas, to-wit:

Lot 71, Section "E" Belmont Subdivision to the City of Little Rock, Pulaski County, Arkansas.

TO HAVE AND TO HOLD the same unto the said GRANTEE and unto her heirs and assigns forever, with all appurtenances thereunto belonging.

And GRANTOR hereby covenants with the said GRANTEE that GRANTOR will forever warrant and defend the title to said lands against all claims whatever, subject to existing easements, building lines, restrictions and assessments of record, if any.

IN TESTIMONY WHEREOF, the name of the GRANTOR and its seal is hereunto affixed by its President, this 5th day of April, 2007.

Rush and Co., Inc.

Ben L. Rush, President

I certify under penalty of false swearing that
the legally correct amount of documentary
stamps have been placed on this instrument
Grantee: Deborah Bennett
Address: 9609 Collie Drive
         Little Rock, Arkansas 72209





Escrow No.: 0702-061-JM

Prepared under the supervision of
James R. Pender, Attorney At Law
Little Rock, Arkansas

00000782

## ACKNOWLEDGMENT

STATE
OF          ARKANSAS

COUNTY
OF          PULASKI

On this 5th day of April, 2007, before me, a Notary Public, duly commissioned, qualified and acting, within and for the said County and State, appeared in person the within named Ben L. Rush to me personally well known, who stated he was the President of the Rush and Co., Inc., a corporation, and was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes herein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 5th day of April, 2007.

_____          _____
Hollye L. Corbell                         Notary Public.

My commission expires:   December 13, 2014

BENNETT  **7**

Date: 11/06/2008

# NOTE

**Multistate**
MERS MIN: 100039032174696373

FHA Case No.

031-3653561-703

October 24, 2008
(Date)

Bennett, Deborah

9609 Collie Dr
Little Rock, AR 72209
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Quicken Loans Inc.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Ninety Thousand Six Hundred Fifty Nine and 00/100

Dollars (U.S. $ 90,659.00                ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Seven and No-Thousandths percent ( 7.000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on December        , 2008      . Any principal and interest remaining on the first day of        November      , 2038        , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at P.O. Box 553154, Detroit, MI 48255-3154
                        or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 603.16                . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - 10/95
-1R (0210).02
VMP Mortgage Solutions (800)521-7291
Page 1 of 2
2037244149

Initials:

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four and No-Thousandths** percent ( **4.000%**) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 10/24/2008 (Seal)     _____ (Seal)
Deborah Bennett    -Borrower    -Borrower

PAY TO THE ORDER OF

_____ (Seal)     _____ (Seal)
WITHOUT RECOURSE    -Borrower

PAY TO THE ORDER OF
GMAC MORTGAGE, LLC    BY _____ (Seal)    WITHOUT RECOURSE _____ (Seal)
WITHOUT RECOURSE    LIMITED SIGNING OFFICER    Pay to the Order of    -Borrower
   GMAC MORTGAGE, LLC f/k/a
   GMAC MORTGAGE CORPORATION    GMAC BANK

_____    _____ (Seal)    QUICKEN LOANS, INC. _____ (Seal)
D. CHIODO    -Borrower    By
ASSISTANT SECRETARY    THERESA ROODBEEN
GMAC BANK    CAPTURE MANAGER

Page 2 of 2

ELECTRONICALLY FILED
2012-Sep-06  09:45:07
60CV-12-3653

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION
SECOND DIVISION

PATI REAL ESTATE HOLDINGS LLC                          PLAINTIFF

vs.                            No.60CV-12-3653

TENANTS OF 9609 COLLIE DRIVE LITTLE ROCK AR (IF ANY);

DEBORAH BENNETT; AND

UNITED STATES OF AMERICA

SECRETARY OF HOUSING AND URBAN DEVELOPMENT          DEFENDANTS

## MOTION TO DISMISS

DEBORAH BENNETT FOR HER MOTION TO DISMISS RESPECTLY SHOWS THE COURT THE FOLLOWING;

1.   The parties name in this matter, are the same parties and the same cause of action in Pulaski Circuit No. 60CV-12-3653. That case is still open ; the law firm who bought this case of action as a new case of action is from the same firm that is attorney of record for 60CV-11-3063.
2. The plaintiff, PATI REAL ESTATE HOLDING LLC, IS NOT REGISTERED TO conduct business in Arkansas.
3. The plaintiff, PATI REAL ESTATE HOLDING LLC IS NOT THE REAL PARTY IN INTEREST AS REQUIRED BY ARKANSAS RULES OF CIVIL PROCEDURE 17, 18, 19, AND 20.
4. 12b8 requires that this case be filed in 60CV -11-3063.
5. The issues are so fundamental that a brief of these issues are not neccessary.
6. WHEREFORE, DEBORAH BENNETT, PRAYS THAT THE COURT DISMISS THE COMPLAINT OF PLAINTIFF, FOR HER COST AND ATTONERY FEES AND ALL OF THE JUST AND PROPER RELIEF.

Respectfully submitted

DEBORAH BENNETT

9609 COLLIE DRIVE

LITTLE ROCK ARKANSAS 72209

501-773 1502

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION
SECOND DIVISION

### CERTIFICATE OF SERVICE

I hear by certify a copy of the above and forgoing was mailed to Shellie Wallace, WILSON & ASSOCIATES,P.L.L.C  1521 MERILL DRIVE, SUITE D-220 LITTLE ROCK, ARKANSAS 72211

501-219-9388 on this 5th day of September 2012.

*Debroah Bennett*

DEBROAH BENNETT

ELECTRONICALLY FILED
2013-Apr-19  10:41:00
60CV-12-3653

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION
THIRD DIVISION


PATI REAL ESTATE HOLDINGS, LLC                                    PLANTIFF


VS                                NO. 60CV-12-3653


TENANTS OF 9609 COLLIE DRIVE LITTLE ROCK (IF ANY);        DEFENDANTS
DEBORAH BENNETT; AND
UNITED STATES OF AMERICA,
SECRETARY OF HOUSING AND URBAN DEVELOPMENT


## <u>AMENDED MOTION TO DISMISS</u>


Defendant for her AMENDED MOTION TO DISMISS respectfully shows the court the following;

1. A previous non-judicial foreclosure was filed against the subject property and defendant in 2011

2. Defendant filed a complaint against GMAC, Mortgage Electronics Registration System, Inc. in the Pulaski County Circuit Court 3rd DIVISION Case No. 60CV-11-3063. This case is still pending.

3. Mortgage Electronics Registration System, Inc. cannot be a mortgagee pursuant to the Arkansas Supreme Court ruling Mortgage Electronics Registration System, Inc. vs. Southwest Homes.

4. GMAC name was changed to Ally Bank subsequently Ally Bank created a mortgage division named Residential Capital LLC.

5. Residential Capital LLC filed a bankruptcy case in the United States Bankruptcy Court of the Southern District of New York; Case no. 12-12020 (MG)

6. At least 30 other mortgage companies owned by Ally Bank filed bankruptcy including GMAC and Pati Real Estate Holdings, LLC 12-12047.

7. Notwithstanding the fact that Pati Real Estate Holdings, LLC filed bankruptcy in May, 2012 and GMAC filed bankruptcy in May, 2012. July 18, 2012 GMAC allegedly signed a deed of trust to Pati Real Estate Holdings, LLC in the Office of the Circuit Clerk Pulaski County, Arkansas, instrument number 2012045251. There is no order from the bankruptcy court permitting this assignment nor did the chapter 11 trustee join in this alleged assignment.

8. The Secretary of Housing and Urban Development is a party to this case. GMAC and Ally Bank are subject to the consent order dated April 13, 2011.

9. Ally Bank is a party to the lawsuit filed by the 49 States Attorney Generals, United States Justice Department and the Secretary of Housing and Urban Development filed in the United States District of Columbia District. Both the administrative consent decree of April 13, 2011 and the consent decree in the District Court case prevents Ally, GMAC, Pati Realty from engaging in the conduct described in Plaintiff's complaint Case No. 60CV-11-3063.

10. The ARKANSAS RULES OF CIVIL PROCEDURE requires the Plaintiff to file its case in 60CV-11-3063. See ARKANSAS RULES OF CIVIL PROCEDURE Rule 12(b)(8) and First Nat'l Bank of DeWitt V. Cruthis, 352 Ark. 292, 100 S.W. 3d 703 (2003).

11. This court has no jurisdiction as this case is before the United States bankruptcy court as cited above. See United States Constitution.

WHEREFORE, Deborah D. Bennett prays that the complaint of plaintiff be dismissed and that her cross-claim against the Secretary of Housing and Urban Development be reserved that she has judgement for her costs and attorney fees pursuant to CIVIL RIGHTS ATTORNEY FEES ACT, 42USC1988, and for her costs and attorney fees pursuant to EQUAL ACCESS TO JUSTICE ACT, 5USC542, as the position of the United States Department of Housing and Urban Development is not sustantialy justified.

Respectfully Submitted,

DEBORAH D. BENNETT
9609 Collie Drive
Little Rock, AR 72209
(501) 773-1572

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above **AMENDED MOTION TO DISMISS** was served on the following:


Samuel High-Wilson and Associates PLLC;
1521 Merril Drive Suite D-220
Little Rock, AR 72211


The Honorable Christopher R. Thyer,
United States Attorney
EASTERN DISTRICT OF ARKANSAS
Metropolitan Tower Bldg
425 W. Capitol Ave Suite 500
Little Rock, AR 72201


On this 19ᵗʰ day of April. 2013,



DEBORAH D. BENNETT

ELECTRONICALLY FILED
2012-Aug-29 08:35:00
60CV-12-3653

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION

PATI REAL ESTATE HOLDINGS
LLC.                                                                    PLAINTIFF

VS.                                        NO. CV-2012-3653

TENANTS OF 9609 COLLIE DR.
LITTLE ROCK, AR (IF ANY);
DEBORAH BENNETT; AND
U.S. OF AMERICA, SECRETARY
OF HOUSING AND URBAN
DEVELOPMENT, et al                                          DEFENDANTS

## ANSWER OF DEFENDANT SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

The defendant Secretary, United States Department of Housing and Urban

Development, represented herein by the United States Attorney for the Eastern District of

Arkansas, for its answer to the plaintiff's foreclosure complaint, respectfully states:

1.    For lack of information sufficient to form a belief, defendant denies all

allegations of the complaint except those admitted herein.

2.    The Court has jurisdiction over the lien of this defendant in the subject

property under 28 U.S.C. § 2410, and has no further jurisdiction with respect to this

defendant.

3.    Admits that the plaintiff owns and holds the note and deed of trust

described in the complaint.

4.    Admits the allegations of paragraph 15 that Defendant Secretary, U.S.

1

Department of Housing and Urban Development, has an interest in the property described in the plaintiff's complaint.

Defendant does not object to the foreclosure of HUD's lien, provided that such lien attaches to the sale proceeds.

WHEREFORE, defendant Secretary, U.S. Department of Housing and Urban Development, respectfully prays that its lien be recognized; that such lien attach to the foreclosure sale proceeds; that the sale proceeds be paid and distributed in accordance with the priority of the liens of the parties as determined by the Court; and that defendant recover its costs herein and have all other relief to which it may be entitled.

CHRISTOPHER R. THYER
United States Attorney

/s/ Richard M. Pence, Jr.

By Richard M. Pence, Jr., AR #69059
Assistant U. S. Attorney
P. O. Box 1229
Little Rock, AR 72203
501-340-2600
richard.pence@usdoj.gov

2

## CERTIFICATE OF SERVICE

I certify that on this ___ day of August, 2012, a copy was mailed by U.S. Mail, postage prepaid, to the following:

Shellie Wallace
Wilson & Associates, P.L.L.C.
1521 Merrill Drive, Suite D-220
Little Rock, AR  72211

/s/ Richard M. Pence, Jr.

Richard M. Pence, Jr.
Assistant U. S. Attorney

3



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Arkansas*

---

*Post Office Box 1229*
*425 W. Capitol Avenue, Suite 500*          *501-340-2600*
*Little Rock, Arkansas 72201*          *FAX  501-340-2730*

August 27, 2012

Larry Crane
Courthouse
401 W. Markham St.
Room 100
Little Rock, AR 72201

      Re:    Pati Real Estate Holdings LLC v. Deborah Bennett, et al
              Pulaski Co. Circuit No. 60 CV-2012-3653

Dear Mr. Crane:

      Enclosed is the Defendant United States of America, Internal Revenue Service's Answer to the Amended Complaint.
      An addressed envelope which requires no postage is enclosed for your convenience in returning the filed copy.

                          Sincerely,

                          CHRISTOPHER R. THYER
                          UNITED STATES ATTORNEY

                          Nicole Hampton
                          Legal Assistant

Enc.

2012045251 Received: 7/24/2012 4:37:15 AM Recorded: 07/24/2012 07:57:16 AM
Filed & Recorded in Official Records of Larry Crane, PULASKI COUNTY
CIRCUIT/COUNTY CLERK Fees $20.00



This Instrument Prepared by:

*WILSON & ASSOCIATES, P.L.L.C.*
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211
(501) 219-9388

## ASSIGNMENT OF DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS:

That GMAC Mortgage, LLC, a corporation organized under and by virtue of the laws of the State of Delaware ("Assignor), for the consideration of the sum of Ten Dollars ($10.00), in hand paid by PATI Real Estate Holdings LLC, ("Assignee"), the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, convey, and assign unto the said Assignee, and unto its successors and assigns forever, all of Assignor s right, title, and interest in and to that certain deed of trust executed by Deborah Bennett on October 24, 2008, and recorded November 13, 2008, as Instrument No. 2008076959 in the Office of the Circuit Clerk and Ex-Officio Recorder of Pulaski County, Arkansas.

TO HAVE AND TO HOLD the same unto the said Assignee, and unto its successors and assigns, forever.

EXECUTED this _18_ day of _July_, _2012_.

Assignor: GMAC Mortgage, LLC

By: _Doug Wilson_

Douglass Wilson  Authorized Officer

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117  ②

17845551

## ACKNOWLEDGMENT

STATE OF ____Pennsylvania____

COUNTY OF ____Montgomery____

     Before me, the undersigned notary public of the state and county aforesaid, personally appeared ____Douglass Wilson____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such persons to be the president (or other such officers authorized to execute the instrument) of GMAC Mortgage, LLC, the within-named bargainor, a corporation, and that such officers executed the foregoing instrument for the purposes therein contained by personally signing the name of the corporation.

     Witness my hand and seal at office in ____)____ this ___18___ day of ___July, 2012.___



Notary Public   **Christine Morales**

My Commission Expires: _____

FHA No. 031-3653561-703

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

*U02826374*

10301   7/20/2012   77845551/1

Department of Defense Manpower Data Center

Results as of : Jul-31-2012 08:15:00

SCRA 2.2.2



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>BENNETT</u> First Name: <u>DEBORAH</u>

Active Duty Status As Of: <u>Jul-31-2012</u>

| Active Duty Start Date | Active Duty End Date | Status | Service Component |
|---|---|---|---|
| On Active Duty on Active Duty Status Date | | | |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Active Duty Start Date | Active Duty End Date | Status | Service Component |
|---|---|---|---|
| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| Order Notification Start Date | Order Notification End Date | Status | Service Component |
|---|---|---|---|
| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

